# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00214-CV

---

### J. D., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 311521, THE HONORABLE CHRISTOPHER L. CORNISH, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant J.D. (Mother) appeals from the trial court's order, following a bench trial, terminating her parental rights to her two sons A.D., born May 17, 2008, and J.C.D., born November 21, 2011 (Sons).[1]  Mother's court-appointed counsel has filed an *Anders* brief concluding that her appeal is frivolous and without merit.  *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights because it "strikes an important balance between the defendant's constitutional right to counsel on appeal and counsel's obligation not to prosecute frivolous appeals" (citations omitted)).  The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal.  *See* 386 U.S. at

---

[1]  The trial court also terminated the parental rights of the father of each child, neither of whom has appealed the trial court's order.

744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied). Counsel has certified to this Court that he has provided his client with a copy of the *Anders* brief and informed her of her right to examine the appellate record and to file a pro se brief. No pro se brief has been filed. We will affirm the trial court's termination decree.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. The case began in August 2019, when the Texas Department of Family and Protective Services (the Department) received a report alleging Neglectful Supervision of Sons by Mother. In the removal affidavit, a copy of which was admitted into evidence at trial, Department investigator Pamela Forte averred that Mother "was seen in the Emergency Room on 08/08/19 for suicidal ideations." Mother "woke up that morning feeling depressed and struggling for motivation to get out of bed," "wanted to cut her wrists," but then had "second thoughts" and called 911 because she "wanted to live for her kids." At the time of Mother's suicidal ideations, she was receiving treatment and medications for ongoing mental-health issues, including diagnoses of "Schizoaffective Disorder Depressive type and PTSD." Mother had informed hospital staff that "there was an incident that occurred [in July 2019] where she was experiencing racing thoughts and went for a walk in her neighborhood" and that "while she was walking, she was approached by an unknown male that started groping her and robbed her." Mother "went home and started crying," "didn't call the Police," and has been "struggling to leave her home since the incident."

Mother tested positive for cocaine and marijuana at the hospital and admitted to using cocaine three days earlier and to using marijuana "every day" to cope with her anxiety.

2

Mother acknowledged smoking marijuana "outside . . . on her front balcony" while "her children are in the home" but claimed that she used cocaine only "at her friend's house." Mother also admitted to Forte "that she has not been taking her medications daily as she has a habit of feeling better and will stop taking her medications" and that "she uses the illegal substances as a replacement to cope with her mental health" issues.

During the investigation, Forte spoke with Mother's oldest son, who told Forte that Mother and her boyfriend "smoke marijuana in the home at least twice a week while he and his brother are present" and that "he has asked his mother to stop and she has quit doing so in the past for a short time however [she] has since started back smoking marijuana in the home." Forte "advised [Mother] the Department has concerns of her illegal drug use while caring for her children and her untreated mental health" issues, and Mother "stated she understood our concerns" and agreed to have Sons removed temporarily from her care. To obtain reunification with Sons, Mother was ordered by the trial court to comply with the terms of a Family Service Plan. Among other requirements, Mother was ordered not to take any illegal drugs, submit to random drug screenings on a weekly basis, and maintain regular contact with her caseworker.

The trial began on November 17, 2021, but the trial court only admitted exhibits into evidence on that date and then recessed the proceedings until February 16, 2022. In February, the trial court heard testimony from Mother and Elizabeth White, the Department conservatorship worker assigned to the case. White, who was not the original caseworker, provided limited testimony as to Mother's compliance with her service plan between September 2019, when the plan was created, and November 2020. However, the clerk's record reflects that Mother attended court hearings during that time, maintained "sporadic" contact with the Department, completed a psychological evaluation, and "attend[ed] some sessions" of

3

individual therapy. According to a permanency report submitted to the court in November 2020, Mother otherwise exhibited a "lack of progress in the completion of her Family Plan of Service," including the requirement that she refrain from using illegal drugs. The record further reflects that Mother missed most of her weekly drug tests from November 2019 through April 2020. Although Mother tested weekly in May 2020, she tested positive for cocaine and marijuana the first week and then tested positive for marijuana in the weeks thereafter. Mother also tested positive for cocaine and marijuana in June 2020. Mother missed most of her tests in July 2020 through September 2020, and on the occasions when she did test, she tested positive for marijuana. In October 2020, Mother tested negative for marijuana on three occasions before testing positive again at the beginning of November 2020.

White testified that Mother had failed to maintain contact with the Department, drug test, or work her services from November 2020 until September 2021, although since that time, Mother has worked on her services and maintained "consistent contact" with White. White added that Mother has "tested consistently" for drugs since September 2021. White recounted that Mother tested positive for marijuana "every week from September 7th to January 11th" and had also tested positive for cocaine in December 2021, but Mother had tested negative for illegal substances since January 2022, approximately one month before the completion of trial. Copies of the drug test results were admitted into evidence. When White asked Mother about the test result that was positive for cocaine, Mother told her that she last used cocaine in July 2021. However, Mother had previously told White that she last used cocaine in February 2021, and "she wasn't able to give [White] an answer for the differences in those two stories." Additionally, the daughter of Mother's boyfriend had reported seeing Mother and Mother's boyfriend using cocaine together at the home of Mother's boyfriend. Despite denying that she

4

continued to use cocaine, Mother acknowledged to White that she continued to use marijuana because the drug "helps her remain calm and regulate her emotions."

At the beginning of the case, Sons were placed in the care of their maternal great aunt and great uncle in Killeen. However, that placement was not intended to be permanent. In March 2021, Sons were placed in the care of Mother's brother (Uncle) in New York but were returned to Texas after Uncle told the Department in October 2021 that he could no longer care for Sons. White testified that Sons had been placed in a foster home since the beginning of November 2021 and that the foster parents were wanting to adopt Sons and be their long-term placement. According to White, Sons "appear very bonded" with the foster parents and have told White "multiple times" that they want to remain with the foster parents. White testified that the foster parents are meeting Sons' emotional and physical needs and that she has no concerns about their home environment. White recommended termination of Mother's parental rights because she believed that the foster parents could provide Sons with safety and stability, but Mother could not.

Mother also testified at trial. When asked to explain why she did not take drug tests or attend counseling from November 2020 until September 2021, Mother testified,

> I lost contact with my other social worker and my kids were already in New York, which I was in contact with them the whole time, and so I thought my case was completely over, and come to find out, it wasn't. So as soon as I found out it wasn't, I popped back on to the case.

When counsel asked Mother if she "just assumed that [her] kids would stay with [her] brother and that would be the end of it," Mother answered in the affirmative. Mother testified that she

5

did not want her parental rights terminated, believed that she was now stable and drug free, and that "in due time [she] would love to be reunited with [her] children."

Mother acknowledged that she had used cocaine in the past and answered in the affirmative when counsel asked her if she used that drug "strictly in a recreational way." She added that she did not know why she used cocaine because it "wasn't doing nothing for" her and "wasn't self-medicating," unlike marijuana, which Mother testified she had used throughout the case to treat her anxiety and other mental-health issues. Mother admitted that she had lied to White about last using cocaine in February 2021 and maintained that the last time she had used that drug was in July 2021. However, she claimed that her cocaine use in July was only a "slight relapse" and that the last time she had "really used" cocaine was in February 2021. When asked how often she used cocaine during that time, Mother testified, "Maybe once or twice a week." Mother also testified that the last time she used marijuana was in September 2021, even though she tested positive for marijuana regularly after that date. The week before trial in February, Mother had begun an outpatient drug treatment program. When asked why she had not started that program earlier, Mother testified, "I didn't believe that I had an addiction." Although Mother acknowledged that she was addicted to marijuana, she denied that she was addicted to cocaine.

At the conclusion of trial, the trial court found that termination of Mother's parental rights was in the best interest of Sons and that Mother had: (1) knowingly placed and knowingly allowed Sons to remain in conditions and surroundings which endangers the physical and emotional well-being of Sons; (2) engaged in conduct or knowingly placed Sons with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically

6

established the actions necessary to obtain the return of Sons. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (2). This appeal followed.

After reviewing the entire record and the *Anders* brief submitted on Mother's behalf, we have found nothing in the record that might arguably support an appeal. Our review included the trial court's endangerment findings, *see* Tex. Fam. Code § 161.001(b)(1)(D), (E), and we have found no issues that could be raised on appeal with respect to those findings, *see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree with counsel that the appeal is frivolous.

## CONCLUSION

We affirm the trial court's termination decree.

_____
Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: July 21, 2022